Filed 3/27/14  M.A. v. Superior Court CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| M.A.,<br><br>     Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>     Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>     Real Party in Interest. | F068619<br><br>(Super. Ct. No. 12CEJ300224-1)<br><br><br>**O P I N I O N** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Brian M. Arax, Judge.

M.A., in pro. per., for Petitioner.

No appearance for Respondent.

Kevin Briggs, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Franson, J., and Peña, J.

M.A. (mother), in propria persona, seeks an extraordinary writ from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] terminating her reunification services and setting a section 366.26 hearing as to her 17-month-old son, Daniel. She contends the juvenile court judge should have disqualified himself because he knew Daniel's foster father. Additionally, she challenges the accuracy of documentary evidence admitted to the court and provides updated information about her financial status. We deny the petition.

**PROCEDURAL AND FACTUAL SUMMARY**

In August 2012, mother, then 34 years old, gave birth to Daniel at 25-weeks gestation. Mother stated she was homeless and drank alcohol during her pregnancy to ease "withdrawal tremors." She also smoked marijuana.

Daniel was admitted to the neonatal intensive care unit in critical condition on a ventilator in cardiorespiratory distress and shock with liver and renal injury. He remained there until January 2013 when he was discharged to the care of foster parents, Mr. and Mrs. S., as mother had not provided any information about relatives for possible placement. During the course of Daniel's treatment, he was diagnosed with fetal alcohol syndrome and underwent a small bowel resection for necrotizing enterocolitis.

Meanwhile, the Fresno County Department of Social Services (department) filed an original dependency petition on Daniel's behalf alleging mother's substance abuse placed him at a substantial risk of harm. (§ 300, subd. (b).) The whereabouts of Daniel's alleged father were unknown.

In September 2012, the matter came before Judge Brian Arax sitting as the juvenile court. The juvenile court detained Daniel and ordered the department to offer

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

mother parenting classes, substance abuse and mental health evaluations and any recommended treatment, and random drug testing. Judge Arax presided over all subsequent hearings in the case.

Mother completed a substance abuse assessment. She said she drank alcohol and experimented with cocaine and methamphetamine in her late teens. However, she had not used either drug since she was 30 and alcohol had not been a problem until the year before when she began to drink heavily. She drank every day before she realized she was pregnant with Daniel. Afterward, she tried to wean herself off of alcohol. Mother also said she completed the "PC 1000" program over three years ago after being arrested for public drunkenness. The assessor recommended she participate in residential substance abuse treatment.

Mother also completed a mental health assessment and the clinician concurred she needed residential treatment. At that time, mother was living with her father and relied on him for financial support. She told the clinician her father was an alcoholic and they had physical altercations.

In December 2012, mother entered Spirit of Women 90-day residential substance abuse treatment program. While there, she visited Daniel regularly.

In January 2013, the juvenile court ordered reunification services for mother consisting of the services already offered plus a domestic violence assessment and recommended treatment. The court did not order any services for Daniel's alleged father.

In February 2013, Daniel was admitted to the hospital with feeding dysfunction with aspiration. Daniel underwent open gastrostomy placement and mother and Mr. and Mrs. S. were trained in feeding him through a gastrostomy tube (G-tube).

In March 2013, mother completed residential treatment at Spirit of Women. In May, her father died.

3

In July 2013, the department filed its report for the six-month review hearing and recommended the juvenile court continue mother's reunification services to the 12-month review hearing. Mother was living in a mobilehome she inherited from her father and was looking for work so she could pay for the rental space. She was participating in aftercare, mental health services and domestic violence counseling through the Phoenix Program, and testing negative for drugs and alcohol. In addition, she was visiting Daniel one to two times a week under the supervision of Mr. and Mrs. S. During her visits, mother learned to feed Daniel with the G-tube. She also bathed him and cared for him. Mr. and Mrs. S. reported that mother was attentive to Daniel's needs and was learning to use his medical equipment. Mother began unsupervised visitation in July.

In July 2013, the juvenile court found there was a substantial probability Daniel could be returned to mother's custody and continued reunification services to the 12-month review hearing, which it set for October 31, 2013.

In its report for the 12-month review hearing, the department advised the juvenile court that mother was making efforts to complete her services but had not demonstrated the ability to meet Daniel's special needs. Daniel required nightly feeding through a G-tube and close monitoring for aspiration and there were indications mother was struggling with sobriety and depression. She said she suffered depression to the point of not wanting to get up in the morning several times a month. She also tested positive for marijuana in August on two consecutive days and subsequently missed several tests. She had not completed aftercare, did not have a sponsor, and was not attending Alcoholics/Narcotics Anonymous (AA/NA) meetings. Mother was, however, visiting Daniel during the day unsupervised and Daniel recognized her and reached for her.

The department also reported that Mr. and Mrs. S. were willing to adopt Daniel or become his legal guardians if mother was not able to reunify with him. They actively participated in all of Daniel's therapies and medical appointments and researched medical

4

support websites for ways to care for short gut premature children, G-tube management, and other issues related to prematurity and fetal alcohol syndrome.

The department recommended the juvenile court terminate mother's reunification services and set a hearing to implement a permanent plan. The department also recommended that the court limit mother's educational rights and appoint Mr. and Mrs. S. as Daniel's surrogate educational representatives. This was the first time the department identified Mr. and Mrs. S. as Daniel's foster parents.

On October 31, 2013, Judge Brian Arax convened the 12-month review hearing and disclosed that he played Little League baseball with Mr. S. in the late 1960's. The court stated:

> "That was 1967, '8 and '9. He was our first baseman. I played against him in school when we were in separate schools. I would see him, his brother, his dad. [I was warmly] disposed to his dad when I was a kid as one of our assistant coaches. We'd see their children, in turn, at various baseball games. That has not occurred in the last, probably, four years now. We are not friends in the sense that we hang out together or socialize, it is more of an acquaintance. But we do go back quite some ways and I do know him. So I must disclose the fact that I know him in court. The Court does not consider that in any way, shape, or form the subject of personal disqualification on my own motion and I'm convinced that I could be fair and impartial, but I think a reasonable person would want to know if I knew the care provider, and I do along the lines I've suggested."

No one objected to Judge Arax presiding over the matter. The court set a contested 12-month review hearing for December 2013.

Mother's attorney filed a statement of issues informing the juvenile court that mother completed a parenting class, was participating in therapy, was attending aftercare, and tested negative for alcohol and drugs since August. Mother believed she made significant progress and asked the juvenile court to continue her reunification services to the 18-month review hearing.

5

Prior to the hearing, the juvenile court received a letter from Spirit of Women Case Manager Rachel Aguirre stating mother completed all phases of treatment and presented herself as "a responsible woman that has learned to seek out help when needed." In addition, mother set "appropriate boundaries in her life with great promise for her future."

In December 2013, the juvenile court convened the contested 12-month review hearing. County counsel advised the court that it received an updated report from the testing laboratory reflecting that mother tested positive for alcohol on December 5 at the highest possible measurement and for marijuana on December 16. Mother's attorney stated that mother questioned the results and requested a continuance so she could take a hair follicle test. The court denied her request.

Social worker Tiffany Murphy-Deaver testified that Aguirre's letter would not change her recommendation to terminate mother's reunification services because mother's positive tests indicated she did not benefit from substance abuse treatment and because mother struggled from depression. Mother told Murphy-Deaver she tested positive for alcohol because she consumed NyQuil but Murphy-Deaver confirmed with the testing laboratory that NyQuil would not produce that result. Mother did not have an explanation for the positive results for marijuana. Mother told Murphy-Deaver on December 17 that she did not want to get out of bed that morning. Murphy-Deaver believed mother's level of depression posed a risk of harm to Daniel given his special needs.

Mother testified Daniel was considered a medically fragile child and had cognitive delays. She was participating in a program with Daniel called Loretta's Little Miracles where Daniel received physical therapy. She also participated with Daniel in Exceptional Parents Unlimited where she received assistance in parenting. She said she completed instruction in parenting and domestic violence and aftercare through Spirit of Women.

6

She also participated in the Phoenix Program, a separate domestic violence program, and would complete the program after three to four more sessions. She had unsupervised visits with Daniel twice a week. She acknowledged cancelling a visit because she was sick but denied cancelling visits because she was tired or "having a bad day."

Mother explained the positive test for alcohol by stating she consumed a full bottle of NyQuil in a 24-hour period. She was using the NyQuil because she was sick. She could not explain the positive test for marijuana. She said she did not smoke marijuana and had not done so for a year. She thought perhaps she ingested it when she went to her neighbors' house because she knew they smoked marijuana. However, they did not smoke marijuana when she was at their home and she did not smell marijuana while at their home.

Mother testified she wanted Daniel returned to her under family maintenance. She said she knew how to feed Daniel through the G-tube and had done so previously when he was fed that way during the day. She also said he passed his swallow test and could eat regular food, which she knew how to prepare and feed him.

Murphy-Deaver, recalled to the stand, testified that mother's depression could be detrimental to Daniel if it caused her to mismanage his feeding through the G-tube. She explained Daniel is fed through the G-tube for 10 hours each night and needed to be released from it. If he were left for a prolonged period, he could wrap himself in the tube and harm himself. In addition, the tube needed to be cleaned.

The juvenile court found it would be detrimental to return Daniel to mother's custody, she was provided reasonable services, and there was not a substantial likelihood Daniel could be returned to her custody by the 18-month review hearing in March 2014. The court terminated mother's reunification services and set a section 366.26 hearing. This petition ensued.

7

Mother's petition consists mainly of a listing of complaints, which distilled to their essence challenge the accuracy of documentary evidence, offer new evidence, and fault the juvenile court for not disqualifying itself. We will address them in that order.

Mother contends the department embellished her drug use and falsely stated she was dropped from the Phoenix Program in its status reports. She also contends medical records included with the status reports inaccurately documented Daniel's ethnicity and falsely stated that she could not be located to authorize Daniel's surgery. We conclude that mother waived the right to challenge any of the evidentiary documentation she cites because the department's reports and all attached documents were entered into evidence without objection. (Evid. Code, § 353.) Consequently, we cannot review mother's contentions as to them.

Mother also offers information as to her current income and identifies a relative who wants to adopt Daniel. We cannot review this information either because we cannot review evidence that was not before the juvenile court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

Finally, mother contends Judge Arax was not objective and should have recused himself because he knew Mr. S. She also claims he attacked her and called her a "liar."

Real party in interest argues this court should disregard mother's contention because she failed to provide adequate legal citations or argument in her petition. We agree mother's petition is devoid of legal citations pertaining to this issue. Further, mother's attorney did not object to Judge Arax presiding over her case. Consequently, mother's attorney waived mother's right to challenge the issue on appeal. (*People v. Williams* (1997) 16 Cal.4th 635, 651-652.)

Assuming, however, for the sake of argument the issue is not waived, we would nevertheless find no merit to mother's claim Judge Arax was biased. "A judge shall be

8

disqualified if … [¶] … [¶] [f]or any reason:  (i)  The judge believes his or her recusal would further the interests of justice.  [¶]  (ii)  The judge believes there is a substantial doubt as to his or her capacity to be impartial.  [¶]  (iii)  A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."  (Code Civ. Proc., § 170.1, subd. (a)(6)(A).)

We have reviewed the reporter's transcript and find no evidence that Judge Arax "attacked" mother or called her a "liar."  Further, we find no evidence Judge Arax was in any way biased.

We construe mother's arguments as challenging Judge Arax's findings it would be detrimental to return Daniel to her custody and there was not a substantial probability Daniel could be returned to her custody by the 18-month review hearing in March 2014. We conclude substantial evidence supports Judge Arax's findings.

Daniel was medically very fragile and required a vigilant care provider.  Mother, however, was still using alcohol and marijuana and was not honest about it.  In addition, she expressed being depressed to the point of not wanting to get out of bed.  Under the circumstances, it was not safe to return Daniel to her custody.

Further, there was not a substantial likelihood Daniel could be returned to mother's custody within the three months remaining before the 18-month review hearing. In order to make such a finding, Judge Arax had to find mother "demonstrated the capacity and ability both to complete the objectives of … her treatment plan and to provide for [Daniel's] safety, protection, physical and emotional well-being, and special needs."  (§ 366.21, subd. (g)(1)(C).)  Given mother's fragile emotional state and dubious sobriety, Judge Arax could reasonably conclude Daniel could not be safely returned to mother by the 18-month review hearing.

9

We find no error on this record and deny the petition.  Mother may, however, petition the juvenile court under section 388 to reinstate reunification services if her circumstances warrant doing so.[2]

## DISPOSITION

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court.

---

[2]  Section 388 allows the parent of a child adjudged a dependent of the juvenile court to petition the court to change, modify or set aside any order upon grounds of change of circumstance or new evidence.  (§ 388, subd. (a)(1).)  The parent bears the burden of showing a genuine change of circumstance has occurred or new evidence has been obtained and undoing the prior order would be in the best interest of the child.  (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 529.)